[No. 557-3.    Division Three.    December 5, 1972.]

HERBIE WOODS, *Appellant*, v. HOWARD BURTON, *Respondent.*

*James B. Hovis* (of *Hovis, Cockrill & Roy*), for appellant.

*Charles H. Amstutz* (of *Smith & Amstutz*), for respondent.

MUNSON, C.J.—Petitioner, Herbie Woods, appeals from a denial of his petition for writ of habeas corpus. In his petition he alleged his confinement in the Wapato City Jail amounted to cruel and unusual punishment.[1]

The trial court found at least 25 violations of the recommended minimum standards for the operation of jails and other local detention facilities prescribed by the Director of the Department of Institutions (now the Secretary of Social and Health Services) pursuant to RCW 72.01.420.[2] Peti-

---

[1] Contrary to the eighth amendment to the United States Constitution and article 1, section 14 of the Washington State Constitution.

tioner's confinement, however, was not found to amount to cruel and unusual punishment. We affirm.

The Wapato City Jail was built in 1908; an addition was constructed in 1964. During the period 1969 to June 1971, the lowest average monthly population of the jail was 21.4 persons per day (January 1970) and the highest average monthly population was 39.2 persons per day (October 1970). On one occasion, 66 persons were confined and receiving meals in the jail during that period of time. It was rare when the women's population exceeded six at any one time.

Petitioner, who describes himself as extremely familiar with this facility,[2] admittedly has an alcoholic problem. We surmise from the record he also has a health problem, a problem not uncommon in alcoholics. The gist of petitioner's complaint, however, goes to the sanitary, hygienic and nutrition aspects of the facility. The Secretary of Social and Health Services, in its 1968 annual report, recommended this facility be replaced by a new facility; if this was not possible, that a larger operating budget be provided. Respondent testified he was unfamiliar with even minimum

---

[2]"Jails and detention facilities—Director to inspect, establish standards and procedures, recommend rules, report to legislature, etc. The director of institutions shall make or cause to be made at least yearly an inspection of all jails and detention facilities, and shall in addition have the following powers and duties:

"(1) To establish recommended procedures concerned with the safekeeping, health, and welfare of all prisoners committed to such jails and other local detention facilities;

"(2) To prescribe minimum standards for the operation of jails and other local detention facilities, including the training of personnel;

"(3) To have authority to recommend the rules and regulations for the control and discipline of the prisoners;

"(4) To make such recommendations to the local sheriff and other officials for the improvement of the jail conditions in such area;

"(5) To maintain adequate records of such jails and make annual reports to the legislature."

[3]He admits having been convicted of driving while under the influence of alcohol on nine occasions, having hundreds of convictions for public intoxication, and having been confined to this facility on those occasions. He is presently released from custody by stipulation, pending the outcome of this appeal.

recommended standards prescribed by the Department of Social and Health Services. The trial court viewed the facilities during the hearing. It concluded that while the violations of the recommended minimum standards did in fact exist, they did not violate the constitutional standards of the Eighth Amendment and article 1, section 14 of our constitution.

Preliminarily, in his brief respondent questions whether a writ of habeas corpus is applicable to raise this issue. We believe it is.

RCW 7.36.140 was amended by Laws of 1971, ch. 81, § 32 and states:

> In the consideration of any petition for a writ of habeas corpus by the supreme court or the court of appeals, whether in an original proceeding or upon an appeal, if any federal question shall be presented by the pleadings, *it shall be the duty of the supreme court to determine in its opinion whether or not the petitioner has been denied a right guaranteed by the Constitution of the United States.*

(Italics ours.) While the italicized portion of the statute pertains to the Supreme Court, we believe no less of a duty falls upon this court when a constitutional question is before it. *Scruggs v. Rhay,* 70 Wn.2d 755, 425 P.2d 364 (1967); *McNear v. Rhay,* 65 Wn.2d 530, 398 P.2d 732 (1965); *Wilken v. Squier,* 50 Wn.2d 58, 309 P.2d 746 (1957); *Buckingham v. Cranor,* 45 Wn.2d 116, 273 P.2d 494 (1954); *Thorne v. Callahan,* 39 Wn.2d 43, 234 P.2d 517 (1951); *State v. Rye,* 2 Wn. App. 920, 471 P.2d 96 (1970).

Likewise, the Supreme Court of the United States has indicated that the purpose of the writ should not be restricted to a determination of the legality of detention, but that it may be utilized to secure relief from any restraint which violates basic and fundamental freedoms. *Harris v. Nelson,* 394 U.S. 286, 22 L. Ed. 2d 281, 89 S. Ct. 1082 (1969); *Peyton v. Rowe,* 391 U.S. 54, 20 L. Ed. 2d 426, 88 S. Ct. 1549 (1968); *Fay v. Noia,* 372 U.S. 391, 9 L. Ed. 2d 837, 83 S. Ct. 822 (1963). *See also State ex rel. Pingley v.*

*Coiner*, 186 S.E.2d 220 (W. Va. 1972); *Commonwealth ex rel. Bryant v. Hendrick*, 444 Pa. 83, 280 A.2d 110 (1971); *In re Harrell*, 2 Cal. 3d 675, 470 P.2d 640, 87 Cal. Rptr. 504 (1970).

We do not mean to imply that every complaint by an inmate alleging violation of the Eighth Amendment or article 1, section 14 of our constitution necessarily forms a basis for a writ of habeas corpus. It is not the function of the courts to superintend treatment or discipline of prisoners in penal institutions. This is the responsibility of those in charge of the prison itself and those officers, both state and local, who are given supervisory powers. However, where there is a clear abuse of discretion, or violation of a constitutional right, all persons, including prisoners, have the right to petition the government for redress. This right includes access to the courts. *Cruz v. Beto*, 405 U.S. 319, 31 L. Ed. 2d 263, 92 S. Ct. 1079 (1972); *Novak v. Beto*, 453 F.2d 661 (5th Cir. 1971), *rehearing denied*, 456 F.2d 1303 (5th Cir. 1972); *Anderson v. Nosser*, 438 F.2d 183 (5th Cir. 1971); *Sinclair v. Henderson*, 435 F.2d 125 (5th Cir. 1970); *Jones v. Wittenberg*, 323 F. Supp. 93 (N.D. Ohio 1971), *aff'd, Jones v. Metzger*, 456 F.2d 854 (6th Cir. 1972); *Holt v. Sarver*, 309 F. Supp. 362 (E.D. Ark. 1970); *Jordan v. Fitzharris*, 257 F. Supp. 674 (N.D. Cal. 1966). Therefore, we find the petition is proper.

■ The standards to be applied in interpreting these provisions, of both constitutions, have not been precisely delineated.[4] The courts which have been called upon to interpret these provisions utilize varying degrees of language which evidence this lack of precise standard. The common thread running through their interpretations, however, relates to the deprivation of human dignity by conditions primarily related to sanitation and hygiene which are

---

[4]The individual opinions of the Chief Justice and Associate Justices in *Furman v. Georgia*, 408 U.S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726 (1972); *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 91 L. Ed. 422, 67 S. Ct. 374 (1947); and *Weems v. United States*, 217 U.S. 349, 54 L. Ed. 793, 30 S. Ct. 544 (1910).

so base, inhumane and barbaric they offend the dignity of any human being.[5] *Novak v. Beto, supra; Sostre v. McGinnis,* 442 F.2d 178 (2d Cir. 1971).

In this instance, the court heard the testimony presented, observed the witnesses and viewed the facility. While it must be readily admitted the facility does not meet the recommended minimum standards aforesaid, the court's denial of the writ emphasizes it was not in such a condition as to shock its conscience or that conditions were so base or inhumane as to offend human dignity. *See Commonwealth ex rel. Bryant v. Hendrick, supra; Brenneman v. Madigan,* 343 F. Supp. 128 (N.D. Cal. 1972).

Petitioner relies heavily upon *Jones v. Wittenberg, supra.*[6] In *Jones,* as in the instant case, the trial judge inspected the facility. He found it to be violative of the Eighth Amendment. We must, as did the court in *Jones v. Metzger,* 456 F.2d 854 (6th Cir. 1972), place great reliance upon the trial court's findings, taking into consideration, and giving credence to, its own observations. Utilizing the standards enumerated above, we cannot find the trial court to be in error.

During oral argument counsel advised improvements

---

[5] Brennan, J.: "values and ideals . . . basic to our scheme of government", Marshall, J.: " 'consistent with our self-respect' ", *Furman v. Georgia, supra;* Warren, C.J.: "nothing less than the dignity of man . . . draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society", *Trop v. Dulles,* 356 U.S. 86, 100, 2 L. Ed. 2d 630, 78 S. Ct. 590 (1958); "so foul, so inhuman and so violative of basic concepts of decency", *Wright v. McMann,* 387 F.2d 519 (2d Cir. 1967); "base, inhumane, and barbaric", *Burns v. Swenson,* 430 F.2d 771 (8th Cir. 1970); "barbaric, . . . debasing, . . . so harsh as to violate basic standards of human decency", *Hancock v. Avery,* 301 F. Supp. 786 (M.D. Tenn. 1969); "grossly excessive . . . shocking or disgusting", *Holt v. Sarver, supra;* "of a shocking and debased nature [justifying] the court [intervention] . . . to restore the primal rules of a civilized community", *Jordan v. Fitzharris, supra.*

[6] In *Jones* the court found the conditions, which appear to be comparable to those of this jail, violative of the prisoner's rights. In a supplemental opinion, *Jones v. Wittenberg,* 330 F. Supp. 707 (N.D. Ohio 1971), detailed remedial action was enumerated; notably, the trial court did not call for the release of the prisoners.

18

have been continuously made in respondent's facility since the trial court's hearing. The exact nature of those improvements is not before us. Obviously, in view of the 1968 jail inspection report, there is much room for improvement in this facility and other similar facilities in our state. State and local governments are not expected to turn their jail facilities into social or country club settings. Nonetheless, the citizens of this state have every reason to expect jails shall comport with a maturing society's evolving standards of decency. *Collins v. Schoonfield,* 344 F. Supp. 257 (D. Md. 1972).

We note the recommended minimum standards do not provide remedies for enforcement, nor do they establish penalties for noncompliance. These are legislative problems which the courts should not resolve. We would hope, however, that with increased monies, apparently now becoming available to local governments, these conditions will be improved.

Judgment affirmed.

GREEN and EDGERTON, JJ., concur.

Petition for rehearing denied December 21, 1972.

Review denied by Supreme Court February 6, 1973.