[Nos. 1483-2; 1485-2; 1582-2.   Division Two.   April 3, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID KEITH, *Appellant.*

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL WORTHEY, *Appellant.*

THE STATE OF WASHINGTON, *Respondent*, v. PATRICK WILLIAM DANIELS, *Appellant.*

*Edward G. Holm* (of *Mooney, Cullen, & Holm*), for appellants.

*Byron E. McClanahan, Prosecuting Attorney*, and *Gary Burleson, Deputy*, for respondent.

PETRIE, A.C.J.—David Keith, Michael Worthey and Patrick Daniels were residents at the Washington Corrections Center at Shelton. At 6 a.m. on December 29, 1973, center guards discovered that these men (along with other residents) were missing from the institution. They were subsequently recaptured and tried to a court; all three were found guilty of the crimes of escape and malicious destruction of property. They contend on appeal: (1) that there was insufficient evidence to support the trial court's findings that they had each maliciously destroyed property; and (2) that they had each been denied the right to speedy trial within the meaning of that term as intended by JCrR 2.03(a)(1) and CrR 3.3(c).[1] We affirm the convictions on both counts as to all three defendants.

■ We consider first the facts as to the crime of malicious destruction of property. Our only function, of course, is to ascertain whether or not there was substantial evidence to support the trial court's findings. The trial court could have found that at 9:30 p.m. on December 28, 1973, all three defendants were present at Pine Hall complex of the Shelton facility; that the next morning at 6 a.m. all three were no longer present; that during the interim between 9:30 p.m. and 11 p.m. there is free access to all portions of the Pine Hall complex; that the window of room G-11 (the room adjacent to that assigned to Daniels but in a different wing than that to which Keith and Worthey were assigned) had been broken; that a concrete lattice barrier (security screen) surrounding the window

[1]JCrR 2.03(a)(1) provides:

"Any person arrested for any offense, including capital cases and other felonies and not released shall be taken without unnecessary delay before a judge. The term 'without unnecessary delay' means as soon as practically possible. In any event, delay beyond the close of business of the judicial day next following the day of arrest shall be deemed unnecessary. The court may, for good cause shown and recited in the order, enlarge the time prior to preliminary appearance."

CrR 3.3(c) provides:

"Criminal trials shall take precedence over civil. A defendant unable to obtain pretrial release shall have priority and the charge shall be brought to trial within 60 days following the preliminary appearance."

had been broken by use of a hydraulic jack; that this opening provided the only feasible exit from Pine Hall during that night; that one freshly dug hole under an exterior security fence provided means of exit from the corrections center grounds; and that the resultant damages amounted to approximately $150. Those facts are sufficient to support a conclusion that the defendants, either as principals or as aiders or abettors, maliciously destroyed property. Because the damage inflicted was more than $20 but less than $250 they were found guilty, pursuant to RCW 9.61.070, of a gross misdemeanor and were sentenced accordingly. We find no error.

We turn then to the speedy trial issue. Keith and Worthey were recaptured, returned to the corrections center early in the month of January 1974, and thereafter were confined in maximum security segregated from the general resident population. This latter confinement is permissible as a form of administrative punishment totally aside from any punishment subsequently imposed by the court because of the conviction of the crime of escape. *State v. Williams*, 57 Wn.2d 231, 356 P.2d 99 (1960). Daniels was not returned to the corrections center until June 4, 1974, following his recapture in, and extradition from, the state of California. In the interim, informations were filed on March 14, 1974, accusing all three defendants of the crimes of escape and malicious destruction of property.

Keith and Worthey were arraigned on the next day, March 15, 1974, and Daniels had no preliminary appearance in court until July 12, 1974. Trial of Keith and Worthey commenced on May 15, 1974, and Daniels' trial commenced on August 26, 1974.

Let us consider the factual situation as applied to Keith and Worthey. They were held in segregated confinement for more than 2 months before the prosecutor filed the information charging them with having committed the crime of escape. By opinion filed this date, we held that a recaptured and returned felon-escapee does not reenter the judicial system as an arrestee newly charged with having

committed another crime—escape—at least until an information so accusing him has been filed by the local prosecuting authority. *State v. Sample,* 13 Wn. App. 123, 534 P.2d 125 (1975). Thus, the provision of JCrR 2.03(a)(1), which requires that an arrestee be taken before a judge before the close of business on the judicial day next following the day of his arrest, is not applicable to defendants Keith and Worthey.

These same two defendants were not brought to trial, however, until 61 days[2] after their "preliminary appearance" in court. Thus, they contend, pursuant to CrR 3.3(c) and (f)[3] the trial court should have granted their motion to dismiss which they made to the court before trial commenced. The prosecution contends, on the other hand, that CrR 3.3(c) is not available to these defendants; that, instead, they are subject merely to CrR 3.3(b), which declares that a criminal charge shall be brought to trial within 90 days following the preliminary appearance.[4]

The critical question, of course, is whether or not each of the defendants could be classified—in the words and within the meaning of CrR 3.3(c)—as "A defendant unable to obtain pretrial release  .  ." Resolution of that issue requires that we examine in some detail what was intended by the Supreme Court when it promulgated the substantially revised rules of criminal procedure, particularly those portions of CrR 3.3 which bear upon the rights of

[2] On May 15, 1974, the defendants moved to dismiss the charges prior to commencement of trial. The clerk's minutes indicate the motion was denied after the court declared "that based upon the setting by Court's administration, the Court has continued the case for one day to assure due administration of justice and that the prosecution is not prejudiced towards the Defendants." Presumably, this was an attempt by the court to assert authority nunc pro tunc granted in CrR 3.3(e). We do not rule upon that purported exercise of discretion.

[3] CrR 3.3(f) provides:

"A criminal charge not brought to trial as required by this rule shall be dismissed with prejudice."

[4] The prosecution's present contention appears to be at variance with a pretrial position. On April 17, 1974, the prosecutor filed a notice of jury trial setting, upon which the notation appears "Sixty-day rule applies from March 15, 1974."

defendants as they relate to the facts in the case at bench.

We note, first of all, that there is no specific enumerations of rights available to residents of penal institutions, per se. Rather, the rules appear to implant specific flesh interstitially upon the skeletonized rights constitutionally available to all defendants who are thrust into the criminal judicial system following their arrest for alleged commission of a crime. Insofar as "speedy trial" becomes the pressing issue, the general rules are that a person arrested for any offense must be brought before the court "without unnecessary delay" and that trial must commence within 90 days of that "preliminary appearance." Extremely liberal rules of pretrial release are provided in part so that an arrestee may significantly assist counsel, appointed or retained, in the preparation of the defense to the charge, and in part because he has at least a limited right to freedom from restraint until final determination of his guilt. When, however, a defendant is unable to effect his release pending trial—and thus he is deprived of his freedom because of the pendency of criminal charges against him—the intent of the rules is that trial must commence minimally within 60 days of his preliminary appearance.

In the case at bench, the defendants were not deprived of their freedom because of the pendency of criminal charges against them; they were deprived of their freedom because they had been returned to custody in a state institution to which they had been sentenced following final conviction of crimes totally unrelated to the pending charges. In this sense, the defendants were deprived of their freedom on an entirely different basis than was the defendant in *State v. Williams*, 85 Wn.2d 29, 530 P.2d 225 (1975), where the 60-day rule was applied. In *Williams*, the defendant was on parole, having completed the period of custodial confinement imposed by the Board of Prison Terms and Paroles. Upon his arrest for having allegedly committed another crime, he was held additionally under a parole hold order issued by the board. He was not automat-

ically subject to recapture (as an escapee) and return to the institution. He was presumed innocent of any act which was the occasion of his rearrest. Because *Williams* was reinjected into the criminal justice system from his prior status as an individual released from actual custodial confinement—and because *Williams* was unable to obtain release from that arrestation—the court applied the 60-day rule, CrR 3.3(c). In other words, *Williams* was subject to the same prejudice as a person arrested for the first time and who would be unable to obtain release from custody.

The defendants in the case at bench were not deprived of their freedom because of an act subsequently committed and not yet adjudicated. They were returned precisely to the institution to which the judicial system had *already* declared they should be confined. There was no reason, therefore, to accelerate the commencement of their trials any more so than if they had been actually released from custody. Accordingly, they were subject to the 90-day rule and not the 60-day rule. Their trials did commence within 90 days of the date of their preliminary appearance in court. Hence, their motions to dismiss on that basis were properly denied.

Defendant Daniels, however, contends he did not receive a speedy trial because he was returned to the corrections center on June 4, 1974, but was not granted a preliminary hearing until July 12, 1974, even though an information accusing him of the crime of escape had been on file in Superior Court for Mason County since March 14, 1974. Prior to commencement of trial he moved to dismiss the information filed against him. The trial court denied the motion.

The record indicates that Daniels was returned to the state of Washington and was taken directly to the Washington Corrections Center by employees of the center under authority of an extradition warrant. There is no indication in the record that either the trial court or the prosecuting attorney knew when Daniels was returned to the state of

Washington prior to the date of his preliminary appearance. In any event, even assuming that there was an unnecessary delay in presenting him to the court for preliminary appearance, there is no indication in the record that the delay prejudiced him in the defense of the charges filed against him. He is entitled to the constitutional right of a speedy trial, but he is not entitled to the dismissal with prejudice provided by CrR 3.3 (f). The trial court did not err in denying Daniels' motion to dismiss the charges filed against him.

Judgments affirmed as to all three defendants.

PEARSON, J., and RUMMEL, J. Pro Tem., concur.

Petition for rehearing denied May 12, 1975.

Review granted by Supreme Court July 29, 1975.