[No. 43788.    En Banc.    November 10, 1976.]

MONTY O. ROBINSON, ET AL, *Appellants*, V. CARL PETERSON, ET AL, *Respondents*.

*Thomas G. Bruce,* for appellants.

*Don Herron, Prosecuting Attorney,* and *Mark L. Bubenik* and *Keith M. Black, Deputies,* for respondents.

ROSELLINI, J.—This action was instituted by persons who were inmates at the Pierce County jail, seeking a writ of mandamus to compel the Pierce County judges to promulgate rules pursuant to RCW 36.63.060, and to provide certain facilities to which the petitioners claimed to be entitled. The sheriff and county commissioners were also joined as defendants.

While the action was pending, rules were adopted by the judges. The petitioners then challenged the adequacy of the rules to meet alleged constitutional requirements. A trial was held in Pierce County, a visiting judge sitting. He denied the petitioners' motion to allow the matter to proceed as a class action, as provided in CR 23.

The respondents were represented by the prosecuting attorney for Pierce County. Before the end of the trial, the prosecutor and the petitioners stipulated to certain changes in the rules as adopted by the superior court. The court found the rules, as amended, to be proper and reasonable with certain exceptions. It then issued a writ of mandate, ordering the respondents to make, fund, and implement certain changes in the rules. The petitioners, not being satisfied with this order, appealed to this court. No cross-appeal was taken by the respondents, and they have assigned no errors. We do not have before us, therefore, the

question whether the court properly prescribed changes in the rules and ordered funding of the same.

Since the trial, the petitioners have been discharged from the jail, and the case is moot unless it can be treated as a class action. Since the case involves questions of concern to all jail inmates, whose interests with respect to those questions are not in conflict, and since the joinder of all of them is impractical, the jail population being a constantly changing one, since the parties opposing the class have acted or refused to act on grounds generally applicable to the class, and since the ability of the petitioners' counsel to adequately represent the class has not been questioned, the doctrine of *Johnson v. Moore*, 80 Wn.2d 531, 496 P.2d 334 (1972), is appropriately applied here.

Had the matter been allowed to proceed as a class action, the question of mootness would not have arisen. *Sosna v. Iowa*, 419 U.S. 393, 42 L. Ed. 2d 532, 95 S. Ct. 553 (1975); *Gerstein v. Pugh*, 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975). Inasmuch as there are no monetary claims or property rights involved, the interests of other members of the class not joined are not adversely affected by the lack of notice, their interests being in harmony with and not adverse to those of the petitioners. *See* CR 23(c). *Mattern v. Weinberger*, 519 F.2d 150 (3d Cir. 1975); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975), *cert. denied*, 421 U.S. 1011, 44 L. Ed. 2d 675, 95 S. Ct. 2415 (1975). The respondents concede that the action has proceeded as a de facto class action and raise no objection on the ground of mootness. For these reasons, and since the action properly could have been allowed to proceed as a class suit, we will treat it as such for purposes of this appeal.

RCW 36.63.060 provides that the judges of the superior courts of the several counties shall, from time to time, prescribe in writing, rules for the regulation and government of the jails, upon subjects which are listed in the section.[1] The statute further provides that the judges shall

---

[1] RCW 36.63.060 provides, in part:

"(1) The cleanliness of the prisoners;

prescribe "[s]uch other regulations as the judges deem necessary to promote the welfare of the prisoners: *Provided,* That such rules shall not be contrary to law."

The superior court judges, in making these rules, sat not as a judicial body but as a specially designated administrative body. The function which they exercised was legislative in character. We must then consider what is the proper scope of review of such actions.

Since judicial administrative agencies are expressly excluded from the coverage of the administrative procedures act, RCW 34.04.010(1), we must look to the common law to find the extent of our reviewing power.

The common-law principles are summarized in 73 C.J.S. *Public Administrative Bodies & Procedure* § 229 (1951). According to that encyclopedia, in reviewing an agency's order which is of a legislative character, the court should only determine whether the agency acted within constitutional and statutory limits. *See Kitsap-Mason Dairymen's Ass'n v. State Tax Comm'n,* 77 Wn.2d 812, 814, 467 P.2d 312 (1970). The judicial inquiry, insofar as it goes beyond a consideration of power within the statute, should be limited to a consideration of whether the order is so at odds with fundamental principles as to manifest an abuse of power. In a proper case, a court may declare a rule adopted by an administrative agency void, but it will not interfere with a rule where its adoption is within the authority conferred by the controlling law, and it is not wholly unreasonable, or such a breach of discretion as to transcend the purpose for which the power to adopt it was conferred. The court will not aid in making or revising a rule, or pass on the

---

"(2) The classification of prisoners in regard to sex;

"(3) Bed and clothing for persons sentenced for felonies;

"(4) Warming, lighting, and ventilation of the prison;

"(5) The employment of medical and surgical aid, when necessary;

"(6) Employment, temperance, and instruction of the prisoners;

"(7) The supplying of each prisoner with a Bible;

"(8) Communications between prisoners and their counsel and other persons;

"(9) The punishment of prisoners for violation of the rules of the prison;"

wisdom or policy of a rule, or substitute its opinion for that of the administrative body. It is confined to deciding whether a rule is lawful and reasonable as applied to the facts of a particular justiciable case.

As stated by the United States Supreme Court in *American Tel. & Tel. Co. v. United States*, 299 U.S. 232, 236, 81 L. Ed. 142, 57 S. Ct. 170 (1936), a court is not at liberty to substitute its own discretion for that of administrative officers who have kept within the bounds of their administrative powers. Error or unwisdom is not equivalent to abuse of power.

Although it has not always used the same terminology, this court generally has applied the same standards, setting aside administrative actions only when they are found to be arbitrary and capricious. *Farrell v. Seattle*, 75 Wn.2d 540, 452 P.2d 965 (1969). One who attacks a rule has the burden of establishing its invalidity, since such a rule enacted pursuant to delegated authority is presumed valid. *Gray v. Powell*, 314 U.S. 402, 86 L. Ed. 301, 62 S. Ct. 326 (1941); *American Tel. & Tel. Co. v. United States, supra*. The petitioners do not question the validity of RCW 36.63.060. There is no express claim that the superior court judges failed to follow the statutory guidelines. However, their attack upon the constitutionality of the rules may be viewed as a claimed violation of that guideline which requires that the rules not be contrary to law.

The petitioners cite no Washington case supporting any of their contentions with respect to the rights of jail inmates. Questions concerning the rights of inmates of prisons and the duties of their custodians have not been frequently before this court. This should not be surprising, since the administration of the state institutions and county jails is an executive function and not a judicial one. *January v. Porter*, 75 Wn.2d 768, 453 P.2d 876 (1969).

We have recently said that prison discipline is an administrative and not a judicial function, and that an inmate is subject to such discipline, including reasonable punishment for infraction of rules. *State v. Williams*, 57 Wn.2d 231, 356

P.2d 99 (1960). We said in *January v. Porter, supra,* that parole is a privilege and not a right, and its revocation lies within the exclusive discretion of the parole board. We noted, however, that a parolee is entitled to a hearing, under RCW 9.95.120, 30 days after he is returned to custody.

We have upheld the right of jail officials to examine the letters and packages, incoming and outgoing, of all inmates. *State v. Hawkins,* 70 Wn.2d 697, 425 P.2d 390 (1967), *cert. denied,* 390 U.S. 912 (1968). We said there that there can be no claim of an invasion of privacy under such circumstances. This is in accord with the general rule. 72 C.J.S. *Prisons* § 18(c) (1951).

In a recent case before the Court of Appeals, Division Three, it was said that, while it is not the function of the courts to superintend treatment or discipline of prisoners in penal institutions, where there is a clear abuse of discretion or a violation of a constitutional right, all persons, including prisoners, have a right of access to the courts (*Woods v. Burton,* 8 Wn. App. 13, 503 P.2d 1079 (1972)). In that case, the court found that, in spite of the fact that in the Wapato jail there were many violations of the minimum standards for the operation of jails prescribed by the director of the Department of Institutions pursuant to RCW 72.01.420, confinement in the jail was not cruel and unusual punishment within the meaning of U.S. Const. amend. 8 or Const. art. 1, § 14.

In another recent case, Division Two of the Court of Appeals, citing *State v. Williams, supra,* held that segregated maximum security confinement is permissible as an administrative punishment for prison escape. *State v. Keith,* 13 Wn. App. 127, 534 P.2d 128 (1975).

In 72 C.J.S. *Prisons* § 18 (1951), it is stated as the general rule that ordinarily a jailer, or like prison official, is vested with a certain amount of discretion with respect to the safekeeping, security, and discipline of his prisoners, and his acts in this respect should be upheld, if reasonably necessary to effectuate the purpose of imprisonment, and

that the courts will not interfere, where it does not appear that he has misused his power for the purpose of oppression.

The United States Supreme Court has recently held that the due process clause entitles a state prisoner to certain procedural protections where, pursuant to state law, he is deprived of good time credits because of serious misconduct. *Wolff v. McDonnell*, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974). On the other hand, it has held that a prisoner has no constitutionally protected interest in remaining in one penal institution; and he may be punished for prison misconduct by transferral to a prison where conditions are more onerous, without the necessity of a hearing, if state law does not condition such transfer upon a finding of misconduct. *Meachum v. Fano*, ............ U.S. ............, 49 L. Ed. 2d 451, 96 S. Ct. 2532 (1976); *Montanye v. Haymes*, ............ U.S. ............, 49 L. Ed. 2d 466, 96 S. Ct. 2543 (1976).

In *Meachum*, the court recognized that a felon does not forfeit all constitutional protections by reason of his conviction and confinement in prison, and that he retains a variety of important rights that the courts must be alert to protect, citing *Wolff*. The rights enumerated in *Wolff* were: (1) a substantial amount of religious freedom, (2) access to the courts, (3) protection from invidious racial discrimination, and (4) the protections of the due process clause.

With respect to the latter, the Supreme Court said in *Meachum*, at page 2538:

> We reject at the outset the notion that *any* grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause. In *Board of Regents v. Roth*, 408 U. S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), a university professor was deprived of his job, a loss which was surely a matter of great substance, but because the professor had no property interest in his position, due process procedures were not required in connection with his dismissal. We there held that the determining factor is the nature of the interest involved rather than its weight. 408 U.S., at 570-571, 92 S.Ct., at 2705-06.

Similarly, we cannot agree that *any* change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause. The Due Process Clause by its own force forbids the State from convicting any person of crime and depriving him of his liberty without complying fully with the requirements of the Clause. But given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and to subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.

The court said further:

[T]o hold as we are urged to do that *any* substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts.

With these general principles and the statutory provisions in mind, we turn to the petitioners' contentions.

It is first suggested that the rules should provide for different treatment for pretrial detainees and convicted offenders. The statutory guidelines do not direct that the rules should be different for these two categories of inmates, and the petitioners point to no constitutional provision which imposes such a requirement. As the respondents point out, CrR 3.2 permits most pretrial detainees to be released on their personal recognizance. Those who cannot satisfy the rule's conditions and cannot raise the prescribed bail must be confined pending trial. Such persons generally are either security risks or are found to be a danger to society. There is no showing before this court that the rules applicable to inmates generally are not reasonable and necessary for the purposes of detention.

It is contended that the court erred in not decreeing that an order must be obtained from the court, upon a showing of probable cause, before telephone calls and visitation communication between prisoners and others can be moni-

tored. Such monitoring is authorized under section 6, rule 2, and section 9, rule 4 (as modified by the court), if the supervising jail officer believes that one of the criteria in section 12, rule 6(A) (1-12), is occurring or is suspected to occur. These criteria are set forth in a footnote. See footnote 2.

Cases cited by the petitioners, culminating in *Procunier v. Martinez*, 416 U.S. 396, 40 L. Ed. 2d 224, 94 S. Ct. 1800 (1974), support the proposition that an inmate has a reasonable expectation of privacy in his communication with others, and particularly is this true with respect to a detainee's right to communicate with his counsel and have access to the courts.

The United States Supreme Court in *Martinez, supra* at page 412, recognized that the preservation of societal order through enforcement of the criminal law, is a primary function of government, and that the maintenance of penal institutions is an essential part of that task. The court said:

> The identifiable governmental interests at stake in this task are the preservation of internal order and discipline, the maintenance of institutional security against escape or unauthorized entry, and the rehabilitation of the prisoners.

(Footnote omitted.)

■ Concluding that these interests justified the imposition of certain restraints on inmate correspondence, the court set forth the following criteria for such restraints, at pages 413-14:

> First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. Rather, they must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. Thus a restriction on inmate

correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad. This does not mean, of course, that prison administrators may be required to show with certainty that adverse consequences would flow from the failure to censor a particular letter. Some latitude in anticipating the probable consequences of allowing certain speech in a prison environment is essential to the proper discharge of an administrator's duty. But any regulation or practice that restricts inmate correspondence must be generally necessary to protect one or more of the legitimate governmental interests identified above.

(Footnote omitted.)

In a footnote on page 414 of the opinion, the court approved criteria for censorship adopted in a policy statement of the Federal Bureau of Prisons. The criteria contained in section 12, rule 6, are in harmony with those criteria, and the petitioners do not contend otherwise. Rather they maintain that the decision to monitor should be made by the court, not by the jail superintendent. The Supreme Court imposed no such requirement. On the contrary, it recognized that prisons cannot be administered by judicial decree.

We are shown no reason to assume that the jail superintendent will not do his duty and abide by the rules and regulations. If at some future time the authority given to him is abused, the courts will be open to complaints by those whose rights have been affected.

What we have said with respect to the monitoring of telephone and other communications disposes of a further contention of the petitioners that the court should not have permitted censorship of inmates' mail under section 12, rule 6(A).[2]

---

[2]"RULE 6—All mail (not subject to Rule 3 above) shall be subject to reading and censorship by the sheriff or his designee if one or more of the following criteria is found to occur:

"(A) *Outgoing letters*

"Outgoing letters from inmates may be disapproved for mailing only

■ The petitioners also propose an equal protection argument not advanced in the trial court. Constitutional issues not presented to or considered by the trial court will not be considered on appeal. *Long v. Odell*, 60 Wn.2d 151, 372 P.2d 548 (1962). An exception, not applicable here, is made where the contention affects the jurisdiction of the trial court. *Kueckelhan v. Federal Old Line Ins. Co. (Mut.)*, 69 Wn.2d 392, 418 P.2d 443 (1966). Another exception, likewise not applicable here, is made where it is shown that, in a criminal trial, a constitutional right of the defendant was invaded. *State v. Lampshire*, 74 Wn.2d 888, 447 P.2d 727 (1968). *And see State v. Carothers*, 84 Wn.2d 256, 525 P.2d 731 (1974).

For the same reason, a contention that denial of exercise is not a permitted punishment for jail inmates cannot be considered.

It is maintained also that curtailment of visitation privi-

---

if the content falls as a whole or in significant part into any of the following categories:

"(1) The letter contains threats of physical harm against any person or threats of criminal activity.

"(2) The letter threatens blackmail or extortion.

"(3) The letter concerns sending contraband in or out of the institution.

"(4) The letter concerns plans to escape.

"(5) The letter concerns plans for activities in violation of institutional rules.

"(6) The letter concerns plans for criminal activity.

"(7) The letter is in code and its contents are not understood by the reader.

"(8) The letter solicits gifts of goods or money from other than family or friends.

"(9) The letter is obscene.

"(10) The letter contains information which if communicated, would create a clear and present danger of violence and physical harm to a human being.

"(11) Insofar as possible, all letters shall be written in English, but every effort should be made to accommodate those inmates who are unable to write in English or whose correspondents would be unable to understand a letter written in English, and reasonable efforts should be made to obtain an interpreter to aid in that purpose.

"(12) The letter contains drugs, controlled substances, or other contraband." Rules for the Government of the Pierce County Jail, section 12, rule 6(A) (January 21, 1975).

leges, as a means of punishment, is constitutionally forbidden, because it interferes with a detainee's access to the courts. The rules in question, section 8, rule 2(B)(2) and (D)(2), expressly provide that denial of visiting privileges shall not apply to an inmate's attorney, a legal intern, or licensed investigator. We find no substance to this contention.

The petitioners maintain that the judges could not constitutionally authorize denial of access to recreational facilities for limited periods as a punishment for minor and major infractions. They cite *Rhem v. Malcolm*, 371 F. Supp. 594 (S.D.N.Y. 1974), *aff'd*, 507 F.2d 333 (2d Cir. 1974), a case involving consideration of the unconscionable conditions existing in the Manhattan House of Detention for Men, popularly known as the Tombs. The district court there said that the city could not impose a punishment upon its detainees greater than that imposed upon convicted persons under state law and consequently struck down a regulation authorizing punishment by deprivation of mail and visiting privileges. The rule authorized both permanent and temporary deprivation of these privileges.

Section 8, rule 2(B)(2),[3] authorizes the denial of visiting privileges only and for no more than 1 week; and visits with attorneys or their designated legal interns, or licensed investigators are not included in the deprivation. The rule applies alike to detainees and convicted offenders.

■ The petitioners do not contend that disciplinary measures cannot be imposed.[4] Such a measure, if it is to be effective, must necessarily involve a deprivation of some jail privilege or amenity, since corporal punishment, deprivation

---

[3]Section 8, rule 2(B), provides, in part:

"(B) An inmate may be punished for a minor violation by order of a supervisory jail officer by using one of the following sanctions:

". . .

"(2) Denying visiting privileges (except with attorneys or their designated legal interns, or licensed investigators) for up to one (1) week; . . ."

[4]A prison inmate is subject to prison discipline, including reasonable punishment for infraction of rules. *State v. Williams*, 57 Wn.2d 231, 356 P.2d 99 (1960).

of property or increased deprivation of liberty are concededly not permitted. Section 8, rule 2(B)(3), authorizes the denial of access to recreation facilities for a limited period. As we read it, it does not authorize the denial of the right to engage in any exercise. The regulation is not shown to be unreasonable..

■ It is contended that a provision for summary punishment for major offenses (section 8, rule 3)[5] denies due process. The rule provides for immediate notice of the claimed infraction and a right of speedy appeal. The punishments authorized[6] do not include any increase in the amount of

[5]Section 8, rule 3, provides:

"Any inmate who is deemed guilty of a major offense may be immediately sanctioned under one of the foregoing provisions, but he must be immediately advised in writing of the offense, the reasons for the punishment and that he may appeal the punishment decision initially to the jail superintendent and then to the presiding superior court judge. Said inmate may within 48 hours of receiving said notice, appeal the decision by requesting a hearing and sending notice to the jail superintendent. The superintendent or his designated assistant shall hold a hearing within three (3) court days of the inmate's giving notice of appeal. After the decision of the superintendent, the inmate may further appeal to the said superior court judge. The superintendent and/or judge shall, at a reasonable time before the hearing, provide the inmate with written notice of all alleged major infractions. After the hearing, a written statement of the evidence relied upon and the reasons for the disciplinary action shall be set forth. In the event the inmate finds it difficult to understand the proceeding, then he shall be afforded the right to have another inmate assist him in preparation and presentation of his case. The right to call witnesses in the inmate's behalf, is subject to denial if such procedure would endanger security, safety or correctional goals, but these rights shall not be arbitrarily denied."

[6]Section 8, rule 2(D), provides:

"(D) An inmate may be punished for a MAJOR VIOLATION by order of the sheriff or the jail superintendent using one of the following sanctions:

"(1) Placing the inmate in solitary confinement in a cell which has a bed, toilet, and water, for a period not to exceed that specified in RCW 36.63.[1]40 (20 days); or

"(2) Denial of visiting privileges up to one week per violation, except this shall not apply to visits with the inmate's attorney, a legal intern, or licensed investigator; or

"(3) Denial of trustee status (for up to 3 weeks per violation); or

"(4) Denial of access to recreational facilities (for up to thirty (30)

time to be served, as was the case in *Wolff v. McDonnell,* 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974), where punishment involved the loss of "good time"; therefore they do not involve a deprivation of liberty. Nor is there any property deprivation authorized. Consequently the disciplinary measures, which are not shown to be disproportionate to the designated offenses, do not trigger the due process requirement of a prior hearing. *See Meachum v. Fano,* ............ U.S. ............, 49 L. Ed. 2d 451, 96 S. Ct. 2532 (1976).

In *Gnecchi v. State,* 58 Wn.2d 467, 470, 364 P.2d 225 (1961), a case involving the suspension of a driver's license, we said:

> The legislature may, in the reasonable exercise of the police power in the interest of public safety, authorize a state agency to act summarily, provided the party aggrieved has an opportunity to present his case on its merits sometime before the action becomes final.

*See Bowing v. Board of Trustees,* 85 Wn.2d 300, 534 P.2d 1365 (1975). As the respondents point out, in an institution where the time that any one prisoner spends in jail is usually very brief, summary punishment is necessary if discipline is to be maintained.

Section 9, rule 2,[7] is challenged. It is contended that the rule should have provided for contact visits with family members and also should have permitted visitation by an inmate's children. The rule, as we read it, does not prohibit contact visits with family members, consistent with the limitations of the facility and the needs of security.

We do question the reasonableness of a rule deny-

---

days per violation); or

"(5) Denial of television (for a period not to exceed 1 month); or

"(6) Withholding commissary (for a period not to exceed one (1) week per violation).

"The same punishment for major violations cannot be consecutive, regardless of the number of violations."

[7]Section 9, rule 2, provides:

"Visiting shall be at such times as designated by the sheriff and may be revised periodically, but the sheriff shall provide for maximum visitation privileges consistent with limitations of space, time, and staff and visitation shall be permitted on a weekend day."

ing an inmate who is confined for a considerable period of time the right to be visited by his children. The petitioners offered evidence that such denial of contact between parent and child is detrimental to the welfare of both. The record indicates that the superior court judges gave this problem only cursory attention, and decided to follow the practice in other institutions. While we do not propose to dictate the exercise of discretion on the part of the persons designated by the legislature to make this decision, we think that since deprivation of visiting privileges may seriously affect the welfare of inmates (a criterion which the legislature designated in authorizing the making of "further rules"), this question should be reconsidered by the superior court judges, with a view to allowing some such visitation, particularly where the inmate's stay is more than transitory.

The petitioners suggest that the lower court should have mandated rehabilitation programs in the jail.[8] The statute authorizing the promulgation of rules does not require such programs, and there is no case cited which holds that rehabilitation is a necessary function of a county jail, under the federal and/or state constitutions. The petitioners, in all of their arguments, fail to take account of the fact that there are significant differences between jails in which the maximum sentence is for a period of 1 year (RCW 9.92.020), most occupancies being of much briefer duration, and state penal institutions, where a prisoner may be confined for many years. Recreational and rehabilitative needs in the latter are much more extensive than in the former.

Here the lower court directed that rehabilitation be pursued within the practical means of the facility and its administration. We cannot say as a matter of law that more is required.

Other contentions of the petitioners have been examined.

---

[8]Section 17, new rule 16, as amended by the trial court, reads:

"That within the limitations of jail resources, efforts shall be made to provide appropriate vocational and educational programs for an inmate when such programs are available from volunteer or existing resources and the inmate so request[s]." Conclusion of Law No. 5 (14).

We find them to be of insufficient substance to warrant further extension of this opinion. With the one exception which we have mentioned, the rules reflect, a conscientious compliance with the statutory guidelines and constitutional requirements, as well as a concern for the welfare of the inmates, with due regard to the needs and purposes of the institution.

Except as modified herein, the judgment is affirmed.

HUNTER, HAMILTON, BRACHTENBACH, and DOLLIVER, JJ., concur.

HALE, J. Pro Tem., concurs in the result.

HOROWITZ, J. (concurring in part and dissenting in part) —The majority's holding that the provision for summary punishment of major offenses (section 8, rule 3) is constitutionally valid is contrary to *Wolff v. McDonnell*, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974), and is completely out of line with other current authority on the right of prisoners to due process.

Section 8, rule 3, provides that any inmate who is deemed guilty of a major offense may be immediately sanctioned with any one of the punishments listed in section 8, rule 2(D). Included as a possible sanction is solitary confinement of up to 20 days. Under section 8, rule 3, the inmate is entitled to immediate written notice of the offense, the reasons for the punishment, and of his right to appeal the decision initially to the jail superintendent and then to the presiding superior court judge. However, the inmate is not entitled to a hearing before solitary confinement is imposed. The superintendent or his assistant has up to 3 court days to hold a hearing after it is requested by the inmate. Thus, it is possible that the inmate may be in solitary confinement for 3 days (or even longer depending upon the calendar) before he is entitled to a hearing on the offense for which he has been sanctioned.

In order for section 8, rule 3, to comply with current requirements of due process, the hearing must be held *be-*

*fore* the imposition of solitary confinement unless the superintendent or jail personnel make a good faith determination that immediate action is necessary to forestall a riot or major disturbance.

*Wolff v. McDonnell, supra,* establishes the general rule that a hearing must precede imposition of solitary confinement. *Wolff* involved Nebraska statutes and prison regulations providing that in case of flagrant or serious misconduct by inmates, the prison superintendent could order either forfeiture or withholding of good time, or confinement in a disciplinary cell. The former sanction was challenged by prisoners. The court held that before good time could be lost or withheld from a prisoner, he is entitled to the minimum requirements of procedural due process. This requires advance written notice of the claimed violation, and a hearing to follow the notice by at least 24 hours at which the prisoner has the right to present his version of the facts underlying the charge. *Wolff v. McDonnell, supra* at 557-58; *accord, United States ex rel. Miller v. Twomey,* 479 F.2d 701, 717-18 (7th Cir. 1973). Importantly, the court stated that these due process protections also apply when solitary confinement might be imposed.

> Although the complaint put at issue the procedures employed with respect to the deprivation of good time, under the Nebraska system, the same procedures are employed where disciplinary confinement is imposed. The deprivation of good time and imposition of "solitary" confinement are reserved for instances where serious misbehavior has occurred. This appears a realistic approach, for it would be difficult for the purposes of procedural due process to distinguish between the procedures that are required where good time is forfeited and those that must be extended when solitary confinement is at issue. The latter represents a major change in the conditions of confinement and is normally imposed only when it is claimed and proved that there has been a major act of misconduct. Here, as in the case of good time, there should be minimum procedural safeguards as a hedge against arbitrary determination of the factual predicate for imposition of the sanction.

*Wolff v. McDonnell, supra* at 571-72 n.19.

The fact that *Wolff* involves a state penitentiary while our case involves a county jail is not significant in determining the due process standards which must be met by section 8, rule 3. A prisoner in a county jail may be serving a sentence of up to 1 year.[9] The requirement of a hearing prior to imposition of a sanction and at least 24 hours after notice to the prisoner, is imposed, stated the court in *Wolff*, when "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause . . ." *Wolff v. McDonnell, supra* at 557. Whether solitary confinement is imposed upon an inmate of a penitentiary or a county jail, the quality of the change in the conditions of confinement is the same in both instances, and thus the degree of "liberty" taken away is the same.

The majority relies heavily upon *Meachum v. Fano*, ........... U.S. ..........., 49 L. Ed. 2d 451, 96 S. Ct. 2532 (1976). The issue in *Meachum* was whether due process entitles a state prisoner to a hearing before transfer to a prison in which conditions are substantially less favorable, absent a state law or practice conditioning such transfer on proof of serious misconduct. The court held it did not. The court was careful to distinguish such a transfer from punitive actions which may be taken against prisoners. The court noted that the state law in question did not condition transfer on the occurrence of specific acts of misconduct.

> But as we have said, Massachusetts prison officials have the discretion to transfer prisoners for any number of reasons. Their discretion is not limited to instances of serious misconduct. As we understand it no legal interest or right of these respondents under Massachusetts law would have been violated by their transfer whether or not their misconduct had been proved in accordance with

[9]RCW 9.92.020 provides that punishment for all gross misdemeanors will be imprisonment in a county jail for not more than 1 year. A computer search of the Revised Code of Washington shows that there are 384 gross misdemeanors. The computer search also shows there are 57 statutes specifically providing for punishment of up to 1 year in a county jail.

procedures that might be required by the Due Process Clause in other circumstances. Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all.

*Meachum v. Fano, supra* at 2540. Therefore, the court's reasoning did not apply to disciplinary actions, such as solitary confinement or loss of good time.

No respondent was subjected to disciplinary punishment upon arrival at the transfer prison. None of the transfers ordered entailed loss of good time, or disciplinary confinement.

*Meachum v. Fano, supra* at 2537.

The majority also relies on *Gnecchi v. State*, 58 Wn.2d 467, 364 P.2d 225 (1961). This case, which permits summary revocation of a driver's license, was written years before the landmark due process cases of *Sniadach v. Family Fin. Corp.*, 395 U.S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (1969); *Goldberg v. Kelly*, 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011 (1970); and *Wolff v. McDonnell*, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974), revolutionized our concept of what is required by due process when the government deprives a person of liberty or property, whether in or out of prison. What force our decision in *Gnecchi* still has is further weakened by the United States Supreme Court's decision in *Bell v. Burson*, 402 U.S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (1971), which holds that as a general rule, except in emergency situations the due process clause requires that when a state seeks to terminate an interest such as a driver's license, it must afford notice and the opportunity to be heard appropriate to the nature of the case *before* the termination becomes effective.

The basic due process requirement of a prior hearing was recently adopted by this court in *Olympic Forest Prods., Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 424, 511 P.2d 1002 (1973), where we held that prejudgment garnishment

without a prior hearing violates due process. We said in that case:

> This elasticity in the *form* of the hearing demanded by due process in different contexts should not, however, be confused with the basic *right* to a prior hearing of some sort.
>
> . . . That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.

*Olympic Forest Prods., Inc. v. Chaussee Corp., supra* at 424, quoting *Boddie v. Connecticut,* 401 U.S. 371, 378, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971).

A prior hearing, however, is not constitutionally required before imposition of the other sanctions set forth in section 8, rule 2(D), *i.e.,* denial of visiting privileges,[10] trustee status, access to recreational facilities, television, or commissary. These are privileges and do not involve the serious change in the conditions of confinement presented by solitary confinement. *See Wolff v. McDonnell, supra* at 571-72 n.19; *United States ex rel. Miller v. Twomey,* 479 F.2d 701, 717 (7th Cir. 1973).

Nor is the prior hearing required, even when solitary confinement is imposed, in cases of emergency.

> A good faith determination that immediate action is necessary to forestall a riot outweighs the interest in accurate determination of individual culpability before taking precautionary steps. Indeed, even in many of the minor decisions that guards must make as problems suddenly confront them in their daily routines, the state's interest in maintaining disciplined order outweighs the individu-

---

[10]Rule 2(D)(2) states denial of visiting privileges does not apply to visits with the inmate's attorney, a legal intern, or licensed investigator. In order for this rule to be consistent with our recent case of *State v. Burri,* 87 Wn.2d 175, 180, 550 P.2d 507 (1976), the rule should not apply to visits with witnesses when the inmate is acting as his own attorney for a forthcoming trial.

al's interest in perfect justice. . . . Some mistakes and some arbitrary conduct are inevitable incidents of effective management of a large group of confined human beings.

*United States ex rel. Miller v. Twomey, supra* at 717. This is consistent with the Supreme Court's caution in *Wolff* that inmates' rights to due process remain subject "to restrictions imposed by the nature of the regime to which they have been lawfully committed. . . . In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Wolff v. McDonnell,* 418 U.S. 539, 556, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974). The rules already contain such an exception for emergencies (section 8, rule 5) which may be referred to in any amended version of section 8, rule 3.

STAFFORD, C.J., and UTTER, J., concur with HOROWITZ, J.