[No. 47350–1.   En Banc.   January 14, 1982.]

HAROLD YOUNG, *Appellant,* v. WHIDBEY ISLAND
BOARD OF REALTORS, *Respondent.*

*Kenneth C. Pickard,* for appellant.

*Helsell, Fetterman, Martin, Todd & Hokanson,* by
*Linda J. Cochran,* for respondent.

Rosellini, J.—This suit was brought under the unfair
business practices act (Consumer Protection Act), RCW
19.86, to recover damages allegedly suffered by the plaintiff,
a real estate salesman, due to his having been deprived of
access to the defendant's multiple listing service. The court
held on summary judgment that there was a violation of
the statute and permanently enjoined the defendant from
denying plaintiff access to the listing service. It found, after
a trial on the damage issue, that during the period he was
unemployed, the plaintiff had lost earnings of $13,500, but
that $6,000 of this could have been avoided by a reasonable
effort on the plaintiff's part. Accordingly, the court awarded
him a total of $7,500. It refused to treble these damages,
finding that the defendant had acted in good faith, with no
intent to violate the law. This court has accepted a direct
appeal by the plaintiff, challenging the amount of damages.
The defendant did not appeal from the holding that the
unfair business practices act had been violated or from the
granting of the injunction.

The plaintiff is a former member of the navy who was
stationed at the Whidbey Island Naval Air Station, and
had become a resident of the area when he retired in 1977.
In 1978, he applied for and received a real estate salesman's
license, pursuant to RCW 18.85.095. He was hired by a
broker named Johnson in Oak Harbor, where he was
employed from April to November 1978.

The broker was a member of the Whidbey Island Board
of Realtors and, as such, had access to its multiple listing
service. This is a service provided by an association to its
members, whereby they agree to share their listings with
each other, thereby increasing the chances that particular
property will be sold and increasing the number of persons
who will have an opportunity to sell it. They also agree to
divide the commission equitably between the listing and
selling brokers. The system works to the advantage of real

estate brokers and salesmen and also to the advantage of persons wishing to buy or sell property.

Such associations are legal under RCW 18.85.400; but they are required to submit their entrance requirements to the Real Estate Commission for approval. The statute sets forth certain requirements that may be imposed upon an entrant, including a requirement that he be a licensed broker, and that an initiation fee (not in excess of $2,500) be paid. The association here (the Whidbey Island Board of Realtors) required that an entrant be a broker, and that he join the board. Brokers who were members were entitled to allow their licensed salesmen to use the listings, but were required to pay additional dues for each salesman, as an associate member, and salesmen were required to abide by the rules of the board. The plaintiff signed an agreement to do so and was granted access to the multiple listing service. After 6 months, however, when he had not paid his dues and had not attended an orientation course required under the rules, his privilege to use the service was revoked. Thereafter, he was unable to function effectively as a salesman because of his lack of access, and his employment was terminated.

Under RCW 18.85.320, Johnson, the broker, was required to return the plaintiff's license to the state board, and did so. However, the section provides for reinstatement of the license if a salesman finds other employment. Evidence presented by the defendant in this action showed that, while brokers on the north end of Whidbey Island would not be likely to hire the plaintiff because of the requirements of the real estate board, there were brokers on the south end of the island who did not use multiple listing services and who were in the market for salesmen. The brokers at the south end were no further from the plaintiff's home than those on the north end. However, his associations had been established on the north end of the island.

It is first argued that the lower court erred in applying the doctrine of avoidable consequences (often termed "mit-

igation of damages") in this action for damages under the unfair business practices act. The rule as stated in C. McCormick, *Damages* § 33, at 128 (1935) is that where one person has committed a tort, breach of contract, or other legal wrong against another, it is incumbent upon the latter to use such means as are reasonable under the circumstances to avoid or minimize the damages. The person wronged cannot recover for any item of damage which could thus have been avoided. *See Ward v. Painters' Local 300*, 45 Wn.2d 533, 276 P.2d 576 (1954).

With respect to torts, the rule is found in Restatement (Second) of Torts § 918 (1979), to the effect that one injured by a tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort, except where the tort–feasor intended the harm or was aware of it and was recklessly disregardful of it, and not then if the injured person intentionally or heedlessly failed to protect his own interests. The director of the American Law Institute, in an introduction to division 9 of the Restatement, draws attention to the fact that the law with respect to unfair trade practices is no longer covered by the Restatement, since it has become a specialized field, governed extensively by statute, and largely divorced from its original grounding in the law of torts.

With respect to the interpretation of RCW 19.86, the legislature has declared that it was intended to complement the federal law on the same subject and that the courts should be guided by interpretations of federal courts in construing comparable statutes. RCW 19.86.920. While RCW 19.86.090 gives a right of action for damages and injunction by anyone injured in his business or property by a violation of its prohibitions, there is no statutory method of determining damages. Therefore the general rules of damages should apply, where they are in keeping with the spirit and intent of the statutes.

A number of federal courts have said that the plaintiff in an antitrust suit has a duty to mitigate damages.

These include *Borger v. Yamaha Int'l Corp.*, 625 F.2d 390 (2d Cir. 1980); *Golf City, Inc. v. Wilson Sporting Goods Co.*, 555 F.2d 426 (5th Cir. 1977); *Triebwasser & Katz v. American Tel. & Tel. Co.*, 535 F.2d 1356 (2d Cir. 1976); *Malcolm v. Marathon Oil Co.*, 642 F.2d 845 (5th Cir. 1981); *Lehrman v. Gulf Oil Corp.*, 464 F.2d 26 (5th Cir.), *cert. denied*, 409 U.S. 1077, 34 L. Ed. 2d 665, 93 S. Ct. 687 (1972), and *Sun Cosmetic Shoppe, Inc. v. Elizabeth Arden Sales Corp.*, 178 F.2d 150 (2d Cir. 1949). In the last cited case, a cosmetics manufacturer furnished demonstrators to some of its "agencies" but refused this service to others, including the plaintiff. The court, in an opinion written by Judge Learned Hand, held that the plaintiff had the duty to mitigate its damage by hiring a demonstrator. Accordingly, recovery was limited to the amount it would have cost the plaintiff to hire such a person. And in *Lehrman v. Gulf Oil Corp.*, *supra*, where the plaintiff, a gasoline station operator, was forced out of business by his supplier's withdrawal of price supports, the court held that the plaintiff's damages should be reduced by an amount representing the past and future earning capacity which he then had but would not have had had he continued to look to his gasoline station as his chief source of income.

We have found no federal case which has rejected the principle, although a California appellate court, in *Guild Wineries & Distilleries v. J. Sosnick & Son*, 102 Cal. App. 3d 627, 637, 162 Cal. Rptr. 87 (1980), has stated without citation of authority that "a broad mitigation rule finds no support in appellate antitrust decisions." Nevertheless, that court held that the plaintiff must show that there was no alternative comparable substitute for the products formerly obtained from the defendant, and thus the court gave effect to the "avoidable consequences" doctrine.

In accordance with the directive contained in RCW 19.86.920, we conclude that the doctrine of avoidable consequences applies in damage actions authorized by RCW 19.86.

■ The plaintiff contends that even though he had a

duty to mitigate his damages, he was not required to explore every alternative and that he did all that was reasonably necessary by commissioning his attorney to request that the defendant relax its requirements and give him access to its multiple listing service. No authority is cited for the proposition that attempting to persuade a defendant to accede to the plaintiff's demands discharges the latter's duty to attempt to avoid the consequences of the plaintiff's refusal. The only case cited, *Tennessee Valley Sand & Gravel Co. v. M/V Delta,* 598 F.2d 930 (5th Cir. 1979) is a tort case, wherein the plaintiff, owner of a barge which was sunk through the negligence of the defendant, had been faced with the alternatives of abandoning the barge or attempting to raise her. The plaintiff chose the latter alternative, incurring expenses which it sought to recover from the defendant. The defendant contended that the plaintiff was negligent in choosing to raise the barge without first asking the Corps of Engineers for permission to abandon it. The court held that raising the barge was a reasonable alternative to abandoning the craft, and that consequently the plaintiff could recover the costs which it incurred in attempting to mitigate its damages. That case affords no support for the plaintiff's theory that an appeal to the defendant to correct his wrong satisfies a plaintiff's duty to avoid the consequences of that wrong.

██ The cases are generally in agreement that the defendant has the burden of showing that the plaintiff had other alternatives open to him which would have allowed him to mitigate his damages. This the defendant did with testimony of two brokers who indicated they would have been willing to hire the plaintiff, had he applied to them. His excuse for not seeking this or any other employment was that he did not know there were opportunities for employment. He did not claim to have made any inquiry. The trial court was justified in finding that the plaintiff had made no attempt to avoid the consequences of the defendant's wrong, and that the amount he could have earned should be deducted from the amount he would have earned

had he continued in his employment, with access to the multiple listing service.

The plaintiff maintains that he could not have hoped to realize earnings in the southern part of the island because he did not have social or business contacts there. This was a matter considered by the trial court in deciding whether the plaintiff could reasonably be expected to seek employment there and also the amount he probably would have earned. It found that there was no appreciable difference in the distances from the plaintiff's home. Evidently taking into account the plaintiff's evidence that he had no associations on the southern part of the island, the court found that, had he taken a position, he would have earned only half as much as the evidence showed other salesmen were earning there. The plaintiff introduced no evidence showing that lack of associations in an area precludes success as a real estate salesman. The court's finding as to the plaintiff's probable earnings was supported by substantial evidence and will not be disturbed.

The plaintiff also contends that the court should have found that his net earnings, had he remained with Johnson Properties and retained access to the multiple listing service, would have been about $24,000 rather than the $13,500 found by the court.

The plaintiff testified as to his calculations of his anticipated earnings, but the court observed the speculative nature of that evidence and found that he had failed to take into account significant factors affecting his probable income. Its finding is supported by the evidence.

■ Last it is urged that the court erred in refusing to award treble damages. The statute makes the award of such damages discretionary with the trial court. The court here found that there was no intentional statutory violation. While witnesses for the defendant testified that its requirements for entry in the association had been submitted to the State Real Estate Board for approval, an affidavit of the administrator for the State Real Estate Division alleged that no application for approval had been received. In any

event, no approval was ever given.

The Superior Court's ruling that RCW 19.86 was violated was based on the failure to obtain state approval and on a California case, *Marin County Bd. of Realtors, Inc. v. Palsson*, 16 Cal. 3d 920, 549 P.2d 833, 130 Cal. Rptr. 1 (1976).[1] It found that while the plaintiff's damages resulted from intentional acts of defendant, the defendant was acting under a mistaken impression that it was proper to so act, and there was no intentional violation of the Consumer Protection Act.

The question whether the defendant violated the Consumer Protection Act is not before us, as no appeal was taken from the Superior Court's ruling on that matter. However, in determining whether that court abused its discretion in denying treble damages, it is necessary to examine the circumstances which gave rise to the lawsuit.

It is not claimed that failure to file a report with the Real Estate Commission caused the plaintiff's damage. It is evident that he lost his access to the multiple listing service because he refused to pay dues as an associate member of the Whidbey Island Board of Realtors,[2] and because he failed to attend an orientation course which was required of all persons using the listing service. Thus the "objectionable" conduct of the defendant was that of requiring salesmen to maintain associate membership on the board and to take an orientation course. Neither of these is an unreasonable requirement on its face. But if either was plainly forbidden by statute, it cannot be said that the board was justified in believing it was acting properly.

RCW 18.85.010(8) provides:

(8) "Real estate multiple listing association" means any association of real estate brokers:

---

[1] In that case the California Supreme Court held that the Marin County real estate board's requirement that associate members (salesmen) be primarily engaged in the real estate business was an anticompetitive practice under its Cartwright (little Sherman) Act.

[2] The amount allegedly owing at the time he was suspended was $57.

(a) Whose members circulate listings of the members among themselves so that the properties described in the listings may be sold by any member for an agreed portion of the commission to be paid; and

(b) Which require in a real estate listing agreement between the seller and the broker, that the members of the real estate multiple listing association shall have the same rights as if each had executed a separate agreement with the seller;

RCW 18.85.400 requires each "multiple listing association" to submit to the real estate commission for approval or disapproval its entrance requirements.[3] The Whidbey

---

[3] "Each real estate multiple listing association shall submit to the real estate commission for approval or disapproval its entrance requirements. No later than sixty days after receipt of the real estate multiple listing associations entrance requirements the commission shall, with the directors approval, approve or disapprove the said entrance requirements. In no event shall the real estate commission approve any entrance requirements which shall be more restrictive on the person applying to join a real estate multiple listing association than the following:

"(1) Require the applicant at the time of application and admission to be a licensed broker under chapter 18.85 RCW;

"(2) Require the applicant, if all members of the real estate multiple listing association are so required, to obtain and maintain a policy of insurance, containing specified coverage within designated limits protecting members from claims by sellers who have made keys to their premises available to members for access to their properties, against losses arising from damage to or theft of contents of such properties;

"(3) Require the applicant to pay an initiation fee computed by dividing an amount equal to five times the book value of the real estate multiple listing association concerned (exclusive of any value for listings and exclusive of all investments not related to the operation of the real estate multiple listing association and exclusive of all real estate), by the number of real estate broker members of said organization: Provided, That in no event shall the initiation fee exceed twenty–five hundred dollars;

"(4) Require the applicant for membership to have been:

"(a) A broker in the territory of the real estate multiple listing association for a period of one year; or

"(b) An associate broker with one year's experience in the area of the real estate multiple listing association, who in addition has had one year's experience as a broker in any other area of the state.

"(5) Require the applicant to follow any other rules of the association which apply to all the members of such association: Provided, That such other rules do not violate federal or state law: Provided, That nothing in this 1969 amendatory act shall be construed to limit the authority of any real estate multiple listing association to engage in any activities which are not otherwise prohibited by law." RCW 18.85.400.

Island Board of Realtors is a "multiple listing association" as defined by RCW 18.85.010(8). These provisions can reasonably be interpreted as permitting a requirement that brokers desiring to use the service join the association. However, a cryptic and somewhat ambiguous affidavit which the plaintiff secured from the director of the Department of Licensing and included in the record, indicates that the department takes the view that membership in such an association may not be required. No ruling to that effect has been published, however. The issue has not been raised on this appeal, and need not be decided. It is sufficient to say that the language of the act itself is amenable to a good faith interpretation that membership in the listing association can be required. It speaks of "entrance" into the association and of "initiation" fees.[4]

As for the requirement that users of the listing service attend an orientation course, this would appear to be authorized by RCW 18.85.400(5), permitting an association to require an applicant to follow any rules of the association which apply to all members. It is undisputed that the rules which were applied in the plaintiff's case were applicable to all other persons in the same position.

Inasmuch as the officers of the defendant board could reasonably believe, as the evidence shows they did, that the requirements which they imposed upon the plaintiff were not objectionable under the law, we find no abuse of discretion on the trial court's part in refusing to order punitive damages.

---

[4]It appears that in the real estate business, membership on a board of realtors is considered an advantage and even a distinction. *See* A. Austin, *Real Estate Boards and Multiple Listing Systems as Restraints of Trade,* 70 Colum. L. Rev. 1325 (1970). The author concludes that a membership requirement is reasonable, provided there are no arbitrary exclusions.

The judgment is affirmed.

BRACHTENBACH, C.J., and STAFFORD, UTTER, DOLLIVER, HICKS, WILLIAMS, DORE, and DIMMICK, JJ., concur.