[No. 35777-8-I. Division One. May 5, 1997.]

LARRY COBB, ET AL., *Plaintiffs*, R/L ASSOCIATES, INC., *Appellant*, v. SNOHOMISH COUNTY, *Respondent*.

224

*John M. Groen* and *Groen & Stephens*, for appellant.

*James H. Krider, Prosecuting Attorney,* and *Joseph B. Genster, Deputy,* for respondent.

WEBSTER, J. — The doctrine of avoidable consequences prevents an injured party from recovering damages it could have avoided through reasonable efforts. Snohomish County denied R/L Associates's application for preliminary plat approval based on an interpretation of the County's road ordinance that this court found to be arbitrary and capricious. *See Cobb v. Snohomish County,* 64 Wn. App. 451, 829 P.2d 169 (1991). Because the trial court, on remand for damages, found that a reasonable developer in R/L's position would have paid the County $10,000 under protest to allow its development plans to go forward while it appealed the County's decision, it did not err in determining that R/L failed to mitigate its damages.

R/L also argues that the trial court (1) erred in denying

R/L's request to withdraw its waiver of its right to a jury trial, (2) abused its discretion in admitting evidence of Mr. Hale's past lawsuits and political affiliations, and (3) abused its discretion in determining the amount of attorney fees due R/L. These are all matters within the trial court's discretion. With the exception of the evidence regarding Mr. Hale's political affiliations, we find no abuse of discretion. While the testimony regarding Hale's political affiliations was irrelevant, its admission was harmless error. We affirm.

## FACTS

R/L Associates (R/L)[1] submitted a preliminary plat application to subdivide real property into eighteen building lots on which it planned to build twelve new homes. Under the then-existing Snohomish County Code (SCC), developers must share in the cost of improving road systems impacted by their proposed development projects. Upon request, developers must prepare a traffic study explaining the effects of the proposed development on the level of traffic service (LOS) of the surrounding road system. Former SCC 26B.53.030(f). The LOS is based on the unused capacity of a particular lane, and ranges from LOS A (little or no traffic delays) to LOS E (very long traffic delays). The developer's level of obligation toward road improvements is based on the LOS. For example, developers who will be served by a road system of LOS C must agree not to protest formation of a road improvement district (RID) and may have to perform frontage road improvements or dedicate an additional right of way. Former SCC 26B.55.030. Developers whose projects will be served by a road system which will be at LOS D after completion of the development must incur obligations to

---

[1]Robert Hale and Larry Cobb are president and vice-president of R/L. The trial court dismissed them because they had no interest in the subject property. Although Hale and Cobb filed a notice of appeal with R/L, they did not argue that the trial court erred in dismissing them. Thus, R/L is the only party appealing the issues addressed.

mitigate the direct impact of the development. Former SCC 26B.55.040(1).

R/L's traffic study disclosed potential impacts to an intersection at 234th Street S.W. and State Highway 99. The study concluded that the "traffic movements" (i.e. particular turn lanes, etc.) affected by traffic from the subdivision operated at LOS C, but that other traffic movements at the intersection, which the subdivision's traffic would not impact, operated at LOS D. The County required obligations of developers based on the intersection as a whole, rather than by traffic movement. So, although R/L's subdivision only impacted movements at LOS C, the County asked R/L to submit mitigation proposals under former SCC 26B.55.040(1), as required for projects at LOS D.

The former SCC provided four options to a developer to mitigate a development's impact on a LOS D road system:

(a) Execution of a valid written voluntary agreement between the county and the developer (and bond if required) by which the developer agrees to pay his proportionate share of the cost of mitigation improvements in accordance with this title;

(b) Formation of a road improvement district (RID) for full improvements, in conformance with RCW 36.88.060, as set forth herein;

(c) Execution of a negotiated voluntary agreement between the county and the developer (and bond if required) by which the developer agrees to fund certain partial or interim improvements which mitigate the direct impact of said development; or

(d) Execution of a voluntary agreement for the payment of a fee to mitigate a direct impact that has been identified as a consequence of the proposed development.

Former SCC 26B.55.040(1).

During the relevant time period, the County interpreted options (a) and (b) as requiring full improvements that would improve the entire intersection to LOS B or better.

Options (c) and (d) did not carry this same requirement. All options required that the mitigation be "feasible." Former SCC 26B.55.010(4).

R/L hired an engineering and land use planning firm to help with the development and obtaining of plat approval. The two employees from the firm assisting R/L were very experienced in traffic impact mitigation agreements; one had been a planner for the County. One of the employees, Mr. Watkins, prepared a mitigation offer to fund the installation of a left-hand turn lane under mitigation option (d) (voluntary agreement to pay a fee to mitigate a specific impact). Watkins had made this same offer regarding the same intersection on behalf of a former client. The County had accepted the offer, but denied that client's overall application for unrelated reasons. Watkins called Ms. Mudgett of the County, who informed him that the offer would be acceptable. Watkins estimated that the construction of the left-turn lane would cost $10,000. Mr. Hale of R/L took over the negotiations from Watkins and did not send the letter making this offer. He wrote a letter in which he expressed his understanding that the County was "requiring" R/L to offer to fund or install a left-turn lane. Hale instead offered to pay a proportionate share of "improvements to the intersection" under option (a). Ms. Mudgett prepared a written recommendation to the hearing examiner that he accept R/L's proposal, with the condition that building permits would be subject to construction of the improvements. R/L revised its offer, however, to agree under option (a) to pay $12.50, its estimated proportionate share of the costs to install a left-hand turn lane. Ms. Mudgett withdrew her recommendation that the hearing examiner accept the offer because, under option (a), the improvements must improve the whole intersection to LOS B or better and improvements to the left-hand turn lane alone would not do so. She advised R/L that an offer to fully fund or construct a left-hand turn lane would be an acceptable offer under options (c) or (d).

The hearing examiner determined that the offer to pay

a proportionate share of a left-hand turn lane under option (a) was unacceptable because (1) option (a) required the entire intersection to be improved to at least LOS B, and (2) full improvements to raise the intersection to LOS B were not feasible because that could only be accomplished with a traffic light, which the Department of Transportation did not want at that intersection.

The hearing examiner determined that R/L must make a new mitigation offer under options (c) or (d), since those options do not require that the entire intersection be raised to LOS B or better. Rather than submitting a revised offer, R/L appealed to the County Council, which upheld the hearing examiner's decision. R/L then appealed to the superior court, challenging the constitutionality of SCC 26B. The superior court found the ordinance constitutional, but directed the County to grant the application for preliminary plat approval upon R/L's payment of $25.00, R/L's proportional share. R/L paid the fee under protest, and appealed the trial court's decision to the court of appeals.

This court upheld the constitutionality of former SCC 26B, but determined that the County's interpretation of the ordinance was incorrect to the extent that it obligated developers to pay for improvements for traffic problems not directly impacted by the development. *Cobb*, 64 Wn. App. at 459. Thus, since the only lane impacted by R/L's development would operate at LOS C, the County could not impose LOS D requirements on R/L. *Id.* The court ordered that R/L's $25.00 payment be refunded and remanded the case so the trial court could hear R/L's claims for over $700,000 in damages. *Id.* at 460.

On remand, the County amended its answer to add the affirmative defense of mitigation of damages, claiming that if R/L had made an offer under protest to pay $10,000 for the left-hand turn lane, the development would have continued while R/L appealed the hearing examiner's decision. After a lengthy trial, the judge determined that the doctrine of avoidable consequences barred R/L's right

to damages, which he determined would only have been $25,133 had R/L been entitled to them.

## DISCUSSION
### Doctrine of Avoidable Consequences

The trial court determined that R/L's damages were not recoverable under the doctrine of avoidable consequences. R/L contends that this was error because the doctrine does not apply as a matter of law and because the trial court's findings that a reasonable developer would have agreed to pay $10,000 under protest to obtain plat approval, retaining the right to appeal, are not supported by substantial evidence.

### Application of the Doctrine

The doctrine of avoidable consequences, also known as mitigation of damages, prevents recovery for damages the injured party could have avoided through reasonable efforts. *Kloss v. Honeywell, Inc.*, 77 Wn. App. 294, 301, 890 P.2d 480 (1995). The injured party's duty is to "use such means as are reasonable under the circumstances to avoid or minimize the damages." *Young v. Whidbey Island Bd. of Realtors*, 96 Wn.2d 729, 732, 638 P.2d 1235 (1982). The party whose wrongful conduct caused the damages, here the County, has the burden of proving the failure to mitigate. *Bernsen v. Big Bend Elec. Coop.*, 68 Wn. App. 427, 435, 842 P.2d 1047 (1993).

R/L does not appear to dispute the trial court's determination that the doctrine applies to RCW 64.40 claims based on the statute's provision for recovery only for damages "necessarily incurred." *See* RCW 64.40.010(4); *see also Fleming v. County of Kane*, 898 F.2d 553 (7th Cir. 1990) (applying the doctrine in a § 1983 claim). Rather, R/L argues that the doctrine does not apply in this particular instance on four grounds: (1) the payment of an unlawful exaction is the surrender of a right of substantial value, which a party is not required to do to minimize damages,

(2) the only opportunity it would have had to make such an offer was before the wrong occurred, at which time it had no duty to mitigate, (3) the hearing officer's decision was an intentional tort, for which there is no duty to mitigate, and (4) its conduct in appealing the hearing examiner's decision was reasonable.

■ First, R/L contends that it had no obligation to pay an unlawful exaction. It bases this contention on the rule that a party cannot be required to surrender a right of substantial value in order to minimize a loss. *See* RESTATEMENT (SECOND) OF TORTS § 918 cmt. j (1965). Here, however, the right surrendered was the right to withhold payment of $10,000, an amount that was insignificant in comparison to the profits at risk and that R/L could readily pay. R/L contends that this was a right of substantial value because it is comparable to the example in comment j of the RESTATEMENT:

> [W]hen a water company illegally refuses to turn on water unless the plaintiff pays a substantial bill that he does not owe <u>and agrees not to sue for the return of the money</u>, a customer who refuses to pay the bill is entitled to recover for the harm caused by the lack of water, even though he had the money and, if he had paid, would have been entitled to restitution because of the duress.

(Emphasis added.)

This example is distinguishable from the instant case because, in addition to surrendering the right to withhold payment, the plaintiff in the example surrenders the right to sue for its return. Here, R/L would have expressly retained that right by paying under protest. R/L also appears to argue that the right is substantial because "the government may not impose a choice between the government benefit and the exercise of a constitutionally guaranteed right," quoting *Parks v. Watson*, 716 F.2d 646, 650 (9th Cir. 1983). But the merits of its case regarding the government action do not impact the requirement that damages be mitigated. By paying under protest, R/L would have expressly retained the right to challenge the exaction.

■ Second, R/L argues that it was not required to mitigate its damages by making an offer under protest because it had no duty to do so before the hearing examiner's decision and no opportunity to do so after. The doctrine of avoidable consequences applies only to damages for harm the plaintiff could have avoided after the tort was committed. *See* RESTATEMENT (SECOND) OF TORTS § 918(1). The trial court determined that the tort was complete on June 15, 1988, when the hearing examiner's decision was published. Accordingly, R/L argues that it was not required to make any offers prior to that date. It could have made the offer after the hearing examiner's decision, however. The hearing officer did not deny the plat outright. Rather, he found that R/L's offer under option (a) of SCC § 26B.55.040(1) was not feasible. Therefore, he determined that R/L must submit another mitigation offer. He specifically noted that under options (c) and (d), full improvement is not required. Rather, these options only require a voluntary agreement for partial or interim improvement or a fee. Thus, R/L could have made an offer under protest after the hearing examiner's decision as well as appealing the decision to the City Council and beyond.

■■ R/L's third argument is that the doctrine of avoidable consequences does not apply because the County's actions were intentional. It is true that there is no duty to mitigate damages arising from intentional conduct. *See Wilson v. City of Walla Walla*, 12 Wn. App. 152, 153, 528 P.2d 1006 (1974). R/L contends that "intentional" means "willful" and does not require any desire to bring about the harm. *See* BLACK'S LAW DICTIONARY 948 (4th ed. 1968); WILLIAM L. PROSSER, LAW OF TORTS 31 (4th ed. 1971). This is not the definition applied to the avoidable consequences doctrine, however. The exception to the doctrine applies only when the tortfeasor "intended *the harm* or was aware of it and was recklessly disregardful of it . . . ." RESTATEMENT (SECOND) OF TORTS § 918(2) (1965) (emphasis added) (cited with approval in *Young*, 96 Wn.2d at 732). R/L did

not assign error to the trial court's express finding that the County did not act with an intent to cause damage, so it is a verity on appeal. Nor does R/L contend that the County was aware of and recklessly disregarded the harm.

■ Finally, R/L argues that its conduct in appealing the decision was reasonable. The doctrine only requires the plaintiff to act as a reasonable person would. "If a choice of two reasonable courses presents itself, the person whose wrong forced the choice cannot complain that one rather than the other is chosen." *Hogland v. Klein*, 49 Wn.2d 216, 221, 298 P.2d 1099 (1956). The decision to appeal the hearing examiner's decision without making an offer under protest is an option provided under the SCC and is not unreasonable as a mechanism for challenging the government's action. It is not a reasonable means to avoid or minimize the damages, however, because it does not do so.

The trial court did not err, as a matter of law, in determining that the doctrine of avoidable consequences applies in this case.[2]

## Factual Basis for Application of Doctrine

■ R/L contends that the trial court's findings that a reasonable developer would have agreed to pay $10,000 under protest and that R/L could have obtained plat approval by doing so are not supported by substantial evidence. Substantial evidence is that sufficient to persuade a fair-minded person of the truth of the matter asserted. *Ridgeview Properties v. Starbuck*, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982).

The trial court determined that a reasonable developer

---

[2]We do not address the propriety of the trial court's determination that the doctrine of avoidable consequences bars R/L from recovering any damages, rather than limits its damages to the $10,000 it could have paid under protest, because neither party raised the issue.

in R/L's position would have paid the $10,000 under protest to proceed immediately with the development in what R/L termed a "hot" real estate market. The court determined that R/L had the funds to expend and that it was a reasonable amount to incur to protect its projected profits of $960,000. The court recognized that R/L had an established business practice of agreeing to or paying government exactions under protest, and that R/L was aware that the $10,000 offer to fund the left-turn lane would likely be accepted by the County, as evidenced by Ms. Mudgett's verbal acknowledgment and Mr. Watkins's prior agreement with the County. Moreover, the hearing examiner specifically instructed R/L to make an offer under option (c) or (d) as part of his written decision. The court also noted that the County often accepted both payments under protest and offers under protest.

The court also gave substantial weight to the expert testimony of Judith Runstad, a land use attorney who has assisted developers with permitting negotiations on many occasions. She concluded that a reasonable developer would have agreed to fund the $10,000 turn lane under protest pursuant to option (d). The court also recognized that R/L's own expert testified that a developer would agree to a $10,000 exaction under protest to proceed with a project expected to result in a $960,000 profit.

The court also noted that R/L had asserted in its letter to the County Council that the hearing examiner sought to require the developer to pay the full amount of the turn lane. Similarly, in its brief to this court in the first appeal, R/L contended that the examiner's intent was that R/L pay the full cost, about $10,000, for a left-turn lane. Thus, the court recognized that R/L understood that such an offer would have been acceptable to the County.

The trial court's determinations that a reasonable developer would have mitigated its damages by offering to fund the left-turn lane under protest is supported by

substantial evidence as is the determination that the County would have accepted such a proposal.[3]

## Withdrawal of Jury Trial Waiver

Following remand from this court, R/L filed a Note for Trial Setting, expressly waiving its right to a jury trial. A bench trial was set for July 27, 1993. In April 1993, the parties stipulated that the County could amend its answer to assert failure to mitigate damages as an affirmative defense. R/L did not retract its jury waiver at that time. A superior court commissioner later granted the County's motion to continue the trial date to December 14, 1993. In August 1993, R/L requested another continuance and demanded a jury trial. The court continued the trial date, but denied the request for a jury trial.

R/L contends that the trial court improperly denied R/L its constitutional right to a trial by jury on the grounds that (1) the continuation of the trial date revived the right to request a jury, and (2) the County's amendment of its pleadings revived the right.

█ █ Withdrawal of a waiver of the right to a jury is within the discretion of the trial court. *Mount Vernon Dodge v. Seattle-First Nat'l Bank*, 18 Wn. App. 569, 581, 570 P.2d 702 (1977). The continuance of a trial date does not revive the right to jury once it has been waived. *Id.* Thus, R/L's first argument, based on the continuance of the trial date, is without merit.

█ R/L did not make its second argument, regarding the amendment of the pleadings, to the trial court. Constitutional issues not presented to the trial court in civil cases are generally not considered on appeal unless they involve the trial court's jurisdiction. *Robinson v. Peterson*, 87 Wn.2d 665, 675, 555 P.2d 1348 (1976); *Northlake Marine Works, Inc. v. City of Seattle*, 70 Wn. App. 491,

---

[3]R/L assigned error to over 40 findings of fact. Although we have not discussed each of these in detail, we have reviewed the challenged findings and determined that they are supported by substantial evidence in the record.

512, 857 P.2d 283 (1993). Thus, we do not address this argument.

### Evidence of Hale's Past Lawsuits and Political Affiliations

R/L alleges that the trial court abused its discretion in allowing the County to question Mr. Hale on the number of lawsuits he has previously brought against the government as well as on his involvement with the Northwest Legal Foundation, a non-profit law firm which espouses obtaining substantial damage awards against the government.

R/L's first argument is that the questioning was not relevant. Evidence is relevant when it tends to make the existence of any fact of consequence more or less probable. ER 401. We review a trial court's ruling on relevance for abuse of discretion. *Crescent Harbor Water Co. v. Lyseng*, 51 Wn. App. 337, 344, 753 P.2d 555 (1988).

The questions regarding Hale's prior litigation and previous payments to the government under protest were relevant to the issue of the reasonableness of his not making such a payment in this case. But the questions regarding his involvement with the Northwest Legal Foundation were not relevant to any issue in this case. Admission of the evidence was therefore error. Because no constitutional right is implicated by the admission of irrelevant evidence, the applicable harmless error test is whether, within reasonable probabilities, the trial's outcome would have been materially affected had the error not occurred. *See State v. Braham*, 67 Wn. App. 930, 939, 841 P.2d 785 (1992). The trial court's decision rested on the fact that a reasonable person would have mitigated his damages and that R/L did not do so. Thus, it is not likely that evidence regarding why R/L may not have mitigated its damages was dispositive, and the error was harmless.

R/L also argues, for the first time on appeal, that the questioning demonstrated a discriminatory purpose and

violated Hale's first amendment right to association. Because, as discussed above, such issues cannot be raised for the first time on appeal, we do not consider these arguments. *See Robinson*, 87 Wn.2d at 675.

## Attorney Fees

 An appellate court reverses the trial court's determination that the amount of attorney fees is reasonable only for abuse of discretion. *Allard v. First Interstate Bank*, 112 Wn.2d 145, 148, 768 P.2d 998, 773 P.2d 420 (1989). The lodestar method is the accepted starting point for attorney fee determinations. *Absher Constr. v. Kent Sch. Dist. No. 415*, 79 Wn. App. 841, 846-47, 917 P.2d 1086 (1995). The court determines the lodestar fee by multiplying the hours reasonably expended by the attorney's reasonable hourly rate. *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 597, 675 P.2d 193 (1983).

 The trial court awarded attorney fees for the original trial and appeal, but not for the trial on remand. Presumably this is because R/L did not prevail at that trial. R/L argues that the hours expended on the trial after remand are reasonable, relying on federal fee-shifting cases. Those cases, however, hold only that all reasonable time spent is to be compensated. *See, e.g., Davis v. City & County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992) (travel time reasonably expended). They do not change the general rule that reasonable hours do not include those spent on unsuccessful claims or other unproductive time. *See Bowers*, 100 Wn.2d at 597. Thus, the court did not abuse its discretion in denying attorney fees for the trial after remand, in which R/L did not prevail on the only issue presented.

 R/L also contends that the trial court erred in awarding attorney fees based on its attorney's historical rates at the time he performed and billed for his services, rather than his rate at the time of trial. The cases that R/L cites for the proposition that attorney fees should be based on current rates were contingency fee cases in which

the court expressly stated that the rationale for doing so was to compensate the attorney for the delay in payment and the inherent risk that he will not be paid at all. *See, e.g., Fisher Properties, Inc. v. Arden-Mayfair, Inc.,* 115 Wn.2d 364, 376, 798 P.2d 799 (1990); *Gates v. Deukmejian,* 987 F.2d 1392, 1406 (9th Cir. 1992). Here, where R/L's attorney was paid on an hourly basis throughout the litigation, the trial court did not abuse its discretion in determining that the actual rate charged was reasonable.

We affirm.

BAKER, C.J., concurs.

AGID, J. (concurring) — I concur with the majority on the facts of this case. A reasonable developer looking at a potential profit of $960,000 would have paid what we later decided was an illegal $10,000 exaction under protest in order to proceed with a very lucrative project. I write separately to point out that the discrepancy between the projected profit and the cost of the exaction is often not nearly so great as it was here. *See, e.g., Henderson Homes, Inc. v. City of Bothell,* 124 Wn.2d 240, 241, 877 P.2d 176 (1994). In a more marginal case where the applicant cannot afford to tie up a more substantial sum for years in litigation, it would not be reasonable to apply the mitigation doctrine. I do not understand the court to be adopting a blanket rule for all RCW 64.40 cases. I only wish to emphasize that what is "reasonable" will depend on the facts and circumstances of each case.

Reconsideration denied August 4, 1997.

Review denied at 134 Wn.2d 1003 (1998).